2022 IL App (1st) 210726-U

No. 1-21-0726

Order filed October 12, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 4448 |
| | ) | |
| CORNELIUS DIGGINS, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court conducted a proper preliminary inquiry into defendant's claims of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and correctly concluded counsel's actions were matters of trial strategy.

¶ 2    Following our remand where we directed the trial court to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), defendant Cornelius Diggins appeals the court's order denying his *pro se* motion for a new trial asserting claims of ineffective assistance of trial counsel. Defendant contends the court erred by failing to (1) admonish him in accordance

with Illinois Supreme Court Rule 401(a) (eff. eff. July 1, 1984) about proceeding *pro se* regarding the motion for a new trial, and (2) appoint new counsel and proceed to a full *Krankel* hearing. For the following reasons, we affirm.

¶ 3        Following a bench trial, defendant was convicted of two counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(1) (West 2014)) and aggravated robbery (720 ILCS 5/18-1(b)(1) (West 2014)) and sentenced to an aggregate sentence of 36 years in prison. We set forth the facts in defendant's initial direct appeal (*People v. Diggins*, 2019 IL App (1st) 162567-U), and we recite them here to the extent necessary to our disposition.

¶ 4        The evidence at trial established that at about 4 a.m. on February 13, 2014, defendant pulled T.B. into an alley and took her phone and wallet. T.B. was afraid and told defendant she would "suck [his] d***" if he allowed her to keep her phone and wallet. Defendant returned her items and threatened to shoot her if she refused. Defendant put his penis in her mouth and ejaculated. He then pulled down her pants and attempted to "insert himself" in her by touching his penis to the outside of her vagina. She repeatedly begged him to stop. Defendant ordered her to perform oral sex again, and T.B. realized defendant did not have a gun. Defendant pushed T.B. and fled. She subsequently identified him at the scene while being treated in an ambulance. T.B. was then transported to the hospital where she agreed to submit to a criminal sexual assault kit.

¶ 5        Emergency personnel and the nurse who treated T.B. testified that T.B. was upset, had reported being forced to perform oral sex, and stated that the offender ejaculated in her mouth. The forensic evidence obtained from a sexual assault kit did not contain sufficient male DNA to profile.

¶ 6     Police officers detained defendant, who matched the offender's description, in the vicinity of the crime on the night of the attack. T.B. identified defendant in a show-up procedure at the scene as the person who sexually assaulted her.

¶ 7     At the police station, defendant gave a statement to Chicago police detective Wade Golab after waiving his *Miranda* rights. Defendant denied assaulting anyone and stated that he approached a girl who looked upset and asked her what was wrong. The girl said she was too old for defendant and that he looked like a rapist. Later, defendant informed Golab that he lied in the earlier interview and admitted to going into an alley with the girl. Defendant stated that he and the girl had agreed that she would give him oral sex for $30. However, defendant gave her only $10 and believed that was the reason "she was lying on him." Golab did not memorialize defendant's statement in writing or on videotape but clarified that he documented all the statements that defendant made to him in general progress reports and supplemental reports.

¶ 8     In closing, defense counsel argued that the evidence was insufficient because T.B. was not credible, other men matching the description of the offender were near the scene, the show-up identification was unreliable, and Golab failed both to interview defendant with another officer and memorialize defendant's statements. Alternatively, counsel argued the encounter between defendant and T.B. was consensual because she offered oral sex in exchange for her belongings and knew defendant was not armed.

¶ 9     The court ultimately found defendant guilty of six counts of aggravated criminal sexual assault, and merged those counts into two counts, and aggravated robbery. In so finding, the court noted the case involved a question of witness credibility. The court found T.B. a compelling witness and indicated it did not believe the interaction between T.B. and defendant was consensual

based on T.B.'s testimony that defendant pushed her toward an alley after indicating that he was armed.

¶ 10    During the sentencing hearing, defense counsel argued in mitigation that defendant did not deserve a harsh sentence and denied that there was "a pattern of any sort here" unless it was for "taking people's property, for committing robberies." After defendant interjected, defense counsel stated:

"My client vehemently disagrees with this line of argument because his defense has been, and continues to be that he wasn't there; however, given your Honor's finding, it's important to argue as if consistently with that finding. So in doing so, I would ask your Honor to grant him leniency. He again is going to disagree with that argument. He's also going to disagree with the argument made in the alternative in his defense at closing argument."

¶ 11    Defendant told the court:

"I'm not guilty of this crime. *** My counsel said I was guilty of consensual sex. I never agreed with her to even say something like that cause *** I never did nothing to this lady. *** So, far as assaulting anyone or anything like that, I never did do -- I never did none of that. *** And for her to say I plead consensual sex, I did nothing like that. So, I will be pleading, you know, ineffective counsel because that would be wrong, you know, just to say that I'm guilty of this crime when I'm not clearly. DNA, fingerprints, whatever else they have, you know, what I'm saying, which I stand in the courtroom to plead my innocence."

¶ 12    The court sentenced defendant to an aggregate term of 36 years in prison.

¶ 13    We affirmed on direct appeal, finding the trial court erroneously admitted other-crimes evidence but that the error was harmless. *Diggins*, 2019 IL App (1st) 162567-U. However, as the trial court failed to inquire into defendant's ineffective assistance of trial counsel claim, we remanded for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). *Id.* We subsequently affirmed the summary dismissal of defendant's petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2016)), which he had filed during the pendency of the direct appeal. *People v. Diggins*, 2021 IL App (1st) 180564-U.

¶ 14    On remand from the direct appeal, defendant filed a *pro se* motion for new trial asserting his *Krankel* claims. In his *pro se* motion, defendant argued that counsel was ineffective for: (1) arguing consensual sex in the alternative because he never admitted guilt; (2) for failing to file a motion to quash arrest and suppress evidence "based on lack of probable cause" because he did not match the description given by T.B.; (3) failing to file a motion to suppress T.B.'s identification of defendant because the show-up procedure was unnecessarily suggestive; and (4) failing to file a motion to suppress defendant's statement to the detective because defendant denied giving a statement and the detective acknowledged the statement was not memorialized.

¶ 15    On March 10, 2021, the trial court conducted a preliminary *Krankel* inquiry.[1] The court apprised defendant of the nature of the hearing and noted it read the trial and sentencing transcripts, defendant's motion, the case file, and the appellate court decision. The court asked whether defendant wanted to argue anything orally, and defendant responded that there were a "few other things," but his "main concern" was that counsel was ineffective "when she overstepped her

---

[1] As the judge who presided over defendant's trial had retired, a different judge presided over the *Krankel* inquiry.

boundary" by arguing that he "was guilty of anything when [he] told her from the start that [he] was innocent." He confirmed he also had wanted counsel to file pretrial motions to suppress evidence, his identification, and his statements.

¶ 16    The court then questioned trial counsel. Counsel stated she had regularly tried cases before the judge who conducted defendant's trial and was familiar with his pattern of ruling. Counsel was aware defendant wished to pursue an innocence theory of defense. However, she argued alternatively that the sexual encounter was consensual because defendant had been identified as the assailant, and he made admissions to a detective "that basically put him there with the female victim" and indicated it was a "failed prostitution transaction rather than a rape." Counsel did not believe defendant's statement should have been admitted, but she "didn't have a basis to file a motion to suppress the statement, because according to [defendant], the statement never happened."

¶ 17    Although counsel argued defendant's innocence, she argued in the alternative given the evidence presented at trial and the trial court's findings. Her alternative argument was that, if defendant was with the victim, it was "at worst a failed robbery, and probably a consensual transaction, and that was just keeping with the evidence." Counsel knew the court was "well-equipped to keep arguments in the alternative separate." She added that she did not file a motion to quash arrest and suppress evidence because there was no physical evidence to suppress. Additionally, counsel did not believe there was a meritorious argument to raise in a motion to suppress the identification.

¶ 18    In response, defendant stated he "was never ID'd by the victim."

¶ 19    Ultimately, the court found that counsel's "actions were one of trial strategy" and there was no need to appoint new counsel for further *Krankel* proceedings, so it denied defendant's motion. The court found trial counsel advocated for defendant's innocence by arguing there was another man stopped by police that night who might have been the perpetrator, arguing the victim was not credible and highlighting the inconsistencies in her statements, and attacking the reliability of the show-up procedure. Counsel also argued defendant was wearing different clothes in the lineup than those stated in the report of the perpetrator, emphasized there was no forensic evidence to corroborate the victim's testimony, "repeatedly and vigorously objected to the proof of other crimes [evidence]," and questioned the detective's credibility and his failure to memorialize defendant's statement. However, given the trial judge's findings, counsel had to address the evidence before the court, which included other-crimes evidence, the victim's testimony, defendant's statements, a positive show-up identification, and the police and medical personnel testimony.

¶ 20    With respect to filing a motion to quash, the court found "there was nothing to quash. Highly unlikely that anything filed would have been successful." It stated defendant was stopped minutes after the assault "only a fourth of a mile" from the crime scene and matched "a very specific description" given by the victim. Defendant also immediately admitted "to being there just moments earlier." Regarding counsel's decision not to file a motion to suppress defendant's statements, the court found "the fact that those statements were not memorialized, even if he made them, would have more likely gone to their weight and not their admissibility."

¶ 21    Defendant mailed a motion to reconsider on March 30, 2021, reasserting the claims made in his motion for a new trial.

¶ 22    On April 29, 2021, the court denied defendant's motion. We allowed defendant leave to file a late notice of appeal on June 30, 2021.

¶ 23    On appeal, defendant contends the *Krankel* inquiry was inadequate where the court failed to (1) admonish him in accordance with Rule 401(a) about proceeding *pro se* on his motion for a new trial, and (2) inquire further into his claim that counsel was ineffective for failing to file a pretrial motion to suppress his statements and pursuing the alternative theory of consensual sex. He argues remand for further proceedings is required.

¶ 24    "Through *People v. Krankel* and its progeny, the Illinois Supreme Court has provided our trial courts with a clear blueprint for the handling of posttrial *pro se* claims of ineffective assistance of counsel." *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 70. The trial court must first "conduct an inquiry to examine the factual basis underlying a defendant's claim." *Id.* If a defendant's claim suggests "possible neglect of the case," then the trial court should move to the second stage of the *Krankel* proceeding, where the defendant receives new representation at an "evidentiary hearing." (Internal quotation marks omitted.) *Id.* ¶ 85. But "[i]f a trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). "A claim lacks merit if it is conclusory, misleading, or legally immaterial[,] or do[es] not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." (Internal quotation marks omitted.) *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 84.

¶ 25    How we review an appellate claim based on *Krankel* depends on "whether the trial court employed the proper procedure and whether it made a determination on the merits." *Id.* ¶ 87. We review the procedure used by the court *de novo*, and if the procedure used was somehow erroneous,

"we will reverse the outcome of the inquiry, unless the error was harmless beyond a reasonable doubt." *Id.* By contrast, where the procedure used by the trial court to conduct a preliminary inquiry under *Krankel* was proper and it reached the merits of the defendant's claim, we will only reverse if that decision was manifestly erroneous. *People v. Jackson,* 2020 IL 124112, ¶ 98. Manifest error means an error that is "clearly evident, plain, and indisputable." *Id.*

¶ 26    Here, defendant challenges both the trial court's procedure and its ultimate determination that the ineffective assistance of counsel claims set forth in his motion for a new trial did not warrant further proceedings. We address each in turn.

¶ 27    Defendant initially argues the procedure was erroneous because the trial court failed to admonish him pursuant to Rule 401(a). Under Rule 401(a), the trial court may not allow a defendant to waive counsel without first admonishing him and determining that he understands: (1) the nature of the charges; (2) the minimum and maximum sentences, including any penalty he may be subjected to due to prior convictions; and (3) he has a right to counsel, and if indigent, to have counsel appointed for him. Ill. S. Ct. R. 401(a) (eff. July 1, 1984). The purpose of this rule is to ensure defendant's waiver of counsel is voluntarily, knowingly, and intelligently made, and where it is, his decision to represent himself must be honored. *People v. Haynes*, 174 Ill. 2d 204, 235, 241 (1996).

¶ 28    We find that the trial court used the proper procedure in addressing defendant's claim of ineffective assistance of counsel and that Rule 401(a) admonishments were not required here. While defendant is correct that Rule 401(a) admonishments apply at critical stages of proceedings, we note that this case was on remand and defendant had previously been found guilty and sentenced. In that context, we are unpersuaded by defendant's argument that he should have been

"reminded" of the Rule 401(a) admonishments regarding the nature of the charges and the possible penalties he faced. See *People v. Young*, 341 Ill. App. 3d 379, 387 (2003) (finding a defendant who had been convicted and sentenced did not require Rule 401(a) admonishments).

¶ 29    Crucially, defendant cites to no pertinent authority to support his contention that the court was required to admonish him pursuant to Rule 401(a) in the context of a preliminary *Krankel* inquiry on remand. Rule 401(a) admonishments are required before the trial court allows a defendant to waive his right to counsel and proceed *pro se*. Ill. S. Ct. R. 401(a) (eff. July 1, 1984). But there is no right to counsel at a preliminary *Krankel* inquiry. Rather, the *Krankel* proceeding is intended to allow the court to ascertain the factual basis of a defendant's ineffective assistance of counsel claims against own counsel and determine *whether* new counsel should be appointed to argue those claims in further proceedings. *People v. Ayres*, 2017 IL 120071, ¶ 11. This inquiry includes the court discussing the claims directly with the defendant. *Id.* ¶ 12 (the preliminary inquiry affords a defendant an opportunity to explain and support his claim of ineffective assistance.). Thus, admonishing defendant pursuant to Rule 401(a) about proceeding *pro se* at that point would be contrary to the intended purpose of the preliminary inquiry stage of *Krankel* proceedings. *Id.* ¶ 11. Accordingly, we find no merit in defendant's claim that the trial court erred by not admonishing him pursuant to Rule 401(a).

¶ 30    We next turn to defendant's claim that the trial court erred by not appointing new counsel and proceeding to a full hearing under *Krankel* to inquire further into his claims that trial counsel was ineffective for failing to file a motion to suppress his statements and pursuing an alternative theory of defense.

¶ 31    A trial court may conduct a preliminary *Krankel* inquiry by: (1) questioning trial counsel about the facts and circumstances surrounding defendant's allegations; (2) discussing the allegations with defendant; or (3) relying on its own knowledge of defense counsel's performance at trial and the insufficiency of defendant's allegations on their face. *People v. Roddis*, 2020 IL 124532, ¶ 78-79. However, "[t]here is no set format for how an initial inquiry into a defendant's *pro se* allegations of ineffective assistance of counsel should be conducted." *People v. Flemming,* 2015 IL App (1st) 111925-B, ¶ 85. A court need not expressly state that it is conducting a *Krankel* inquiry. *People v. Short,* 2014 Il App (1st) 121262, ¶ 121.

¶ 32    We find the court conducted an adequate inquiry under *Krankel* into defendant's *pro se* claims that trial counsel was ineffective for failing to file a motion to suppress his statement to Detective Golab and arguing an alternative theory. Here, the trial court gave defendant the opportunity to explain his ineffectiveness claims and questioned trial counsel regarding her decision not to file a pretrial motion to suppress and to argue alternatively that defendant's sexual encounter with the victim was consensual. See *Flemming,* 2015 IL App (1st) 111925-B, ¶ 85. Additionally, the court stated it reviewed the case file, the appellate court decision, and the trial and sentencing transcripts prior to conducting the hearing. See *Ayres*, 2017 IL 120071, ¶ 12 ("[T]he trial court is permitted to make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations."). *Krankel* allows for a flexible method of inquiry into a defendant's claims, including the procedure employed here— discussions with defendant about his allegations, the insufficiency of defendant's contentions on their face, and the court's consideration of the full trial record and trial counsel's performance. Those procedures conducted by the court demonstrate that it properly ascertained the factual basis

of defendant's ineffective assistance claims and complied with the requirements of a preliminary inquiry under *Krankel*.

¶ 33    We also find that the trial court did not manifestly err in determining that defendant's *pro se* allegations of ineffective assistance were matters of trial strategy that cannot serve as the basis of a *Krankel* claim. Defendant claimed counsel should have filed a motion to suppress defendant's initial statements to the detective. The court found that, although defendant's statements were not memorialized and defendant later denied making the statements, that went towards the weight given to the statements rather than their admissibility and any pretrial motion to suppress likely would have been unsuccessful. The court further found that counsel thoroughly addressed defendant's statements to the detective during cross-examination, closing, and at sentencing. The decision whether to file a motion to suppress is generally a matter of trial strategy, and nothing in this record indicates that defendant's statements were truly involuntary or he did not waive his *Miranda* rights. We therefore agree with the court that defendant was not entitled to the appointment of new counsel to pursue this ineffective assistance of counsel claim. *People v. Martin*, 236 Ill. App. 3d 112, 121-22 (1992).

¶ 34    We also agree with the trial court that defendant was not entitled to the appointment of new counsel to pursue his claim that he was denied effective assistance because counsel pursued the alternative theory that the sexual contact was consensual despite his proclamation of innocence. The court found that possible neglect of defendant's case was not demonstrated because counsel did argue defendant's innocence and attacked the State's evidence but had to argue an alternative theory based on the findings and evidence before the court. Although the defense was ultimately unsuccessful at defendant's bench trial, the trial court's finding that counsel's presentation of an

alternative theory of defense based on the evidence and rulings in the case amounted to trial strategy and was not indicative of possible neglect was not manifestly erroneous. See *People v. Guest*, 166 Ill. 2d 381, 394 (1995) (choice of defense theory is a matter of trial strategy).

¶ 35    In reaching our conclusions, we reject defendant's contention that his *pro se* claims of ineffective assistance of counsel warranted appointment of new counsel and "a full blown evidentiary hearing." "New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel." *Roddis*, 2020 IL 124532, ¶ 35. As previously stated, where the court determines the claim lacks merit or involves matters of trial strategy, it "need not appoint new counsel and may deny the *pro se* motion." *Moore*, 207 Ill. 2d at 78. Here, the court properly found that counsel's actions were matters of trial strategy and did not indicate possible neglect of defendant's case. See *Robinson*, 2017 IL App (1st) 161595, ¶ 84 ("A claim lacks merit if it is conclusory, misleading, or legally immaterial[,] or do[es] not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." (Internal quotation marks omitted.)). Therefore, we agree with the trial court that appointment of new counsel and proceeding to a full second stage *Krankel* proceeding was not warranted.

¶ 36    In sum, we conclude that the trial court properly conducted a preliminary *Krankel* inquiry to ascertain the factual allegations surrounding defendant's *pro se* claims of ineffective assistance of trial counsel. Further, the court's finding that defendant's claims did not indicate possible neglect on the part of trial counsel was not against the manifest weight of the evidence. Accordingly, the trial court did not err in denying defendant's *pro se* motion for a new trial that raised claims of ineffective assistance of counsel.

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.